# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRISTAN KHAN** ) | |
| 8 Gainsborough Studios South ) | |
| London, UK, N1 5EE ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| V. ) | |
| ) | **COMPLAINT** |
| **DEPARTMENT OF HOMELAND** ) | |
| **SECURITY** ) | **Civil Action No:** |
| 245 Murray Lane, SW ) | |
| Washington, District of Columbia  20528-0075 ) | |
| ) | |
| And ) | |
| ) | |
| **U.S. CUSTOMS AND BORDER** ) | |
| **PROTECTION** ) | |
| 1300 Pennsylvania Ave. ) | |
| Washington, District of Columbia  20229 ) | |
| ) | |
| ) | |
| **As to each Defendant Serve:** ) | |
| Matthew M. Graves ) | |
| United States Attorney for The ) | |
| District of Columbia ) | |
| 601 D Street NW ) | |
| Washington, DC  20530 ) | |
| ) | |
| Attorney General of the ) | |
| The United States ) | |
| U.S. Department of Justice ) | |
| 950 Pennsylvania Avenue ) | |
| Washington, District of Columbia 20530 ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF

For his Complaint, Tristan Khan ("Mr. Khan" or "Plaintiff"), by the undersigned counsel, states as follows:

1. Plaintiff brings this action for injunctive relief and other appropriate relief and seeks the disclosure and release of agency records improperly withheld from Plaintiff by the Defendants, the Department of Homeland Security, and its subordinate agencies, pursuant to the Privacy Act of 1974, 5 U.S.C. §552a et seq. ("PA") and the Freedom of Information Act, 5 U.S.C. §552(a) et seq. ("FOIA").

### PARTIES

2. Plaintiff is a Canadian citizen and a resident of London in the United Kingdom.

3. The Defendant, Department of Homeland Security (DHS), headquartered at Washington, D.C., and their federal agencies fall under the definition of "federal government agency" within the meaning of (1) 28 U.S.C. §1346(b), 28 U.S.C. §2401(b), and 28 U.S.C. §2671, and (2) 5 U.S.C. §552(f)(1) and 5 U.S.C. §552a(a)(1). The U.S. Customs and Border Patrol (CBP) is a component of DHS, headquartered at Washington, D.C. The DHS is in possession, custody, and control over documents and records about Plaintiff.

### JURISDICTION AND VENUE

4. The Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(1), and 28 U.S.C. §1331. The Court has the authority to issue declaratory and injunctive relief under 28 U.S.C § 1361. The venue is proper in this Court pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(5), and 28 U.S.C. §1391 (b) and (e). The Court has the authority to award attorneys' fees and expenses under 5 U.S.C. §552(a)(4)(E)(i) and 28 U.S.C. § 2412.

**FACTS**

5. Mr. Khan, Plaintiff, received a notification from the Customs and Border Protection on January 30, 2023, informing him that his Nexus membership had been revoked.

6. On March 6, 2023, Mr. Khan submitted a request for records under the Freedom of Information Act (FOIA) to the U.S. Customs and Border Protection, in which he requested a copy of "*all travel records, including all U.S. Customs reports, notes, documents and memoranda regarding my international entries and exits from the U.S., including TECS reports.*" A copy of Mr. Khan's request and confirmation of his submission is enclosed herein as **Exhibit A**.

7. On April 25, 2023, Mr. Khan, Plaintiff, retained the National Security Law Firm to represent him in his request for records under the Freedom of Information Act (FOIA).

8. On April 27, 2023, National Security Law Firm submitted a request to the CBP FOIA department to transfer the FOIA request (CBP-FO-2023-051579) submitted by Mr. Khan to the Secure Release account of Mr. Khan's counsel. **Exhibit B**.

9. On May 3, 2023, the Customs and Border Protection provided a letter to Plaintiff's counsel acknowledging receipt of the FOIA/Privacy Act request that Mr. Khan submitted on March 6, 2023, as well as our request to transfer on April 27, 2023. The CBP FOIA department granted this request and reassigned Mr. Khan's FOIA request (CBP-FO-2023-051579) to Plaintiff's counsel. **Exhibit C**.

10. On August 24, 2023, Plaintiff's counsel signed into the Secure Release account to check the status of Mr. Khan's FOIA request, given the lack of correspondence received from the CBP FOIA department. In doing so, Mr. Khan's counsel discovered that his request (CBP-FO-2023-051579) was no longer listed on the Secure Release account. Plaintiff's counsel

sent an email to the Secure Release support team for assistance. **Exhibit D**. In response, Plaintiff's counsel was informed that the request had been viewed as a third party request and was therefore administratively closed. **Exhibit E**.

11. On August 25, 2023, Mr. Khan's counsel responded to the wrongful closure by providing a copy of the CBP FOIA department's confirmation of reassignment from May 3, 2023. Mr. Khan's FOIA request was reopened and remanded for processing. **Exhibit F**.

12. On August 31, 2023, the Customs and Border Protection issued a Final Determination letter to Plaintiff's counsel indicating that records were partially releasable, citing FOIA exemptions (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E). **Exhibit G**. However, Mr. Khan's counsel was not able to access the records because his FOIA request was still missing from counsel's Secure Release account. Thus, Mr. Khan's counsel sent an email to the CBP FOIA Public Liaison to explain the issue and request assistance. **Exhibit H**.

13. The Public Liaison responded on September 7, 2025 with instructions to contact the Secure Release Support Team. **Exhibit I**

14. On September 13, 2023, Mr. Khan's counsel redirected a request for help to the Secure Release Support Team. In response, the Secure Release Support Team stated, "*It appears that the requester account associated with CBP-FO-2023-051579 was updated by the agency after the request was received. We have initiated a process to resync the request to the SecureRelease portal and to the account registered to nicolette@nationalsecuritylawfirm.com.*" **Exhibit J**

15. On September 14, 2023, Mr. Khan's counsel was finally able to access the records that were partially released in response to Mr. Khan's FOIA request. The records received are enclosed herein as **Exhibit K**.

16. The records received in response to Mr. Khan's FOIA request only included a global enrollment summary and a risk assessment worksheet, neither of which provide much insight into the underlying reason of his ineligibility for membership of the United States NEXUS program.

17. Furthermore, The CBP FOIA department failed to release secondary inspection reports, personal encounter reports, a personal query, and entry summaries, despite these records being named in our request.

18. On or about January 31, 2024, Plaintiff arrived at the Los Angeles International Airport and was subjected to a lengthy secondary screening interview. During the interview, Plaintiff was informed that he must obtain a waiver in order to gain entry into the United States and that this had been a requirement for him throughout the last 19 years. Plaintiff was also informed that a consular or immigration officer has reason to believe Plaintiff is an alien who is or has been an illicit drug trafficker. Accordingly, Plaintiff was deemed inadmissible for entry into the United States and was issued a Withdrawal of Application for Admission form. **Exhibit L**.

19. However, during the last 19 years, Plaintiff was not only granted entry into the US *without* a waiver, but he was also approved for the NEXUS program. These inconsistent facts highlight the inaccuracies of the Agency's record keeping and the need for the Court to intervene.

20. These random stops are creating ongoing stress and uncertainty. In addition to the anxiety, the random stops resulted in Plaintiff suffering economic losses from the cost of his flights, including those he took to destinations that he was barred from, as well as those he was forced to purchase to return home.

21. On December 17, 2024, Mr. Khan's counsel contacted the CBP FOIA Department to inquire about the submission of an appeal in response to the final determination of Mr. Khan's FOIA request, CBP-FO-2023-051579. Mr. Khan's counsel received no response.

22. On January 6, 2025, Mr. Khan's counsel attempted to submit an appeal for the withholding of various responsive records. **Exhibit M**.

23. On January 7, 2025, Mr. Khan's counsel received a message from the CBP FOIA Appeals Department, stating the appeal submitted on January 6, 2025 was administratively closed due to its untimely submission. **Exhibit N**.

24. On January 9, 2025, Mr. Khan's counsel submitted a new FOIA request to the CBP on Mr. Khan's behalf, for all records CBP may have including, but not limited to *Trusted Traveler inquiries, secondary stops, risk and threat assessments, border crossings, global enrollment summary, etc. Furthermore, we ask for the immediate declassification review of any records that would be responsive to our request.* A more specific description of the records being sought include: (1) All interagency and intra-agency correspondence pertaining to the above; (2) All interagency and intra-agency records related to Tristan Sean Khan and/or his PASS ID number: 994033603; (3) All interagency and intra-agency records related to Tristan Sean Khan; (4) All interagency and intra-agency records that were considered in the determination of Tristan Khan's eligibility for any of the Trusted Traveler Programs; (5) All investigation and standard forms pertaining to Tristan Khan, that were created by the Customs and Border Patrol and/or the Department of Justice; (6) Any Information relied upon by the Agency, that references or identifies the individual, resulting in the revocation of Mr. Khan's NEXUS; and (7) Any criminal records possessed by or used by CBP in the adjudication of his NEXUS. **Exhibit O**.

25. On January 24, 2025, our firm received a notification stating Mr. Khan's FOIA request had been administratively closed because it lacked proper third party consent. **Exhibit P**. Our firm responded to this notification on January 24, 2025 with an appeal, pointing to Mr. Khan's signature beneath a statement verifying that his/her information may be released to us. **Exhibit Q.**

26. The FOIA appeals department responded to our appeal on January 27, 2025, in which they stated, *"Upon review of your case file, we determined that FOIA Division did not conduct a sufficient search for records based on your submission. We therefore grant your appeal and remand your initial request, CBP-FO-2025-046111, to FOIA Division for processing."* **Exhibit R**.

27. CBP has not complied with Plaintiff's request from January 9, 2025 as required by law. To date, CBP has not released any records to Plaintiff in response to his request.

## LEGAL FRAMEWORK

28. The Freedom of Information Act (FOIA) provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person." 5 U.S.C. § 552(a)(3) (emphasis added). Thus, FOIA creates a presumption that records held by the federal government must be produced to members of the public upon request.

29. Section 552(d) expressly provides that it "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section." Thus, records may only be withheld if they fall within one of Section 552's enumerated

exemptions. The only exemptions raised by Defendants in denying the Plaintiff's request for records were Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).

30. Exemption (b)(6) provides that Subsection (a)(3)'s obligation to make records available "does not apply to matters that are… personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" To justify withholding or redaction of specific information contained in records, the Government must establish that the information sought to be excluded from disclosure is a "personnel [or] medical file[]" or a "similar" such file. 5 U.S.C. § 552(b)(6). CBP must then establish that specific individuals have a significant privacy interest in information contained in the requested files. *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32, 33 (D.C. Cir. 2002) ("[t]he 'burden is on the agency' to show that requested material falls within" Exemption 6).

31. If the Court finds a significant privacy interest at stake, it must balance that privacy interest against the Plaintiff's interest and the public interest in disclosure. *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1228 (D.C. Cir. 2008); *Nat'l Ass'n of Home Builders*, 309 F.3d at 32. The relevant public interests include an interest in information that would "shed light on an agency's performance of its statutory duties" and information that would let citizens know "what their government is up to[.]" *Multi Ag Media LLC*, 515 F.3d at 1231 (internal citation omitted). Here, disclosure of the records containing the reason for which the Plaintiff was revoked from the NEXUS program would shed light on whether the agency had denied the Plaintiff for a permissible reason within the scope of CBP's authority, or for an impermissible reason outside the scope of its authority.

32. In engaging in this balance, and in determining whether production of the relevant records with redactions of specific personal identifiers would be sufficient to protect

identified privacy interests, the presumption in favor of disclosure is strong. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 380-81 (1976); *Multi Ag Media LLC*, 515 F.3d at 1227. On information and belief, the portions of CBP records explaining the specific reason(s) for which the Plaintiff's NEXUS membership was revoked would not reveal any specific personal identifiers of individuals other than the Plaintiff. Alternatively, if the sections explaining why the Plaintiff's entry was revoked specifically mention specific personal identifiers of other individuals, the references to such personal identifiers could be redacted without likewise redacting the actual reason for which the Plaintiff's NEXUS was revoked.

33. Exemption (b)(7)(C) provides that Subsection (a)(3)'s obligation to make records available "does not apply to matters that are… records or information compiled for law enforcement purposes, but *only to the extent that* the production of such law enforcement records or information… could reasonably be expected to constitute an unwarranted invasion of personal privacy" (emphasis added). As with Exemption 6, CBP must establish that specific individuals have a significant privacy interest in information contained in the requested files. *Bartko v. DOJ*, 898 F.3d 51, 66 (D.C. Cir. 2018); *Akin, Gump, Strauss, Hauer & Feld, L.L.P v. DOJ*, 503 F. Supp. 2d 373, 383 (D.D.C. 2007).

34. As with Exemption 6, if the Court finds any significant privacy interest at stake, the Court must balance the identified significant privacy interest in nondisclosure against the Plaintiff's interest and the public interest in disclosure. *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). As with Exemption 6, in performing this balancing test, courts have assessed whether the agency could redact the documents to protect individual privacy interests while releasing the remaining information. *Mays*, 234 F.3d at 1327; *Prows v. DOJ*, No. 90-2561, 1996 U.S. Dist. LEXIS 23122 at *8-9 (D.D.C. Apr. 25, 1996). On information and belief, the portions of CBP

records explaining the specific reason(s) for which the Plaintiff's NEXUS program was revoked would not reveal any specific personal identifiers of individuals other than the Plaintiff. Alternatively, if the sections explaining why the Plaintiff's NEXUS was revoked specifically mention specific personal identifiers of other individuals, the references to such personal identifiers could be redacted without likewise redacting the actual reason for which the Plaintiff's NEXUS was revoked.

35. Exemption (b)(7)(E) provides that Subsection (a)(3)'s obligation to make records available "does not apply to matters that are... records or information compiled for law enforcement purposes, but *only to the extent that* the production of such law enforcement records or information… would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law" (emphasis added). Exemption 7(E) only applies to information that can fairly be characterized as describing confidential law enforcement techniques or procedures not known to the public. *Ibrahim v. U.S. Dep't of State*, 311 F. Supp. 3d 134, 144 (D.D.C. 2018). On information and belief, the portions of CBP records explaining the specific reason(s) for which the Plaintiff's NEXUS was revoked would not reveal any confidential law enforcement techniques or procedures. Alternatively, if the sections explaining why the Plaintiff's NEXUS was revoked specifically refer to any such techniques or procedures, the references to such techniques or procedures could be redacted without likewise redacting the actual reason for which the Plaintiff's entry into this Program was revoked. *See, e.g.*, *Ibrahim*, 311 F. Supp. 3d at 144.

36. Moreover, the Plaintiff is not simply a member of the public requesting access to information about third parties, but rather an individual requesting information about himself.

The Privacy Act provides that "[e]ach agency that maintains a system of records shall upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system [and] permit him… to review the record and have a copy made of all or any portion thereof in a form comprehensible to him[.]" 5 U.S.C. § 552a(d)(1). The Privacy Act accordingly creates a presumption that records held by the federal government that pertain to a specific individual must be made available to that individual upon request.

37. Records may only be withheld or redacted under the Privacy Act if they fall within one of the enumerated exemptions in subsections (j) or (k). Defendants at no point raised *any* Privacy Act exemption as a basis for withholding or redacting the requested information. *See* Exhibit G. This is presumably because none of the Privacy Act exemptions apply. The only exemption that could conceivably apply is the Privacy Act's corollary to Exemption (b)(7)(E), Exemption (k)(2). Exemption (k)(2) allows for exemptions of "investigatory material compiled for law enforcement purposes[.]" However, even if Defendants were to raise Exemption (k)(2), it would not permit the excessive redactions and withholdings that have occurred here. Exemption (k)(2) provides that "if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal" the identity of a confidential informant. 5 U.S.C. § 552a(k)(2). The Plaintiff's NEXUS revocation to the NEXUS program—a privilege or benefit to which he would otherwise be eligible. Accordingly, under the Privacy Act, Plaintiff is entitled to access the requested records which pertain directly to him.

38. Lastly, upon receipt of an individual's request under FOIA and/or the Privacy Act, under (a)(6)(A)(i), the agency must "determine within 20 days (excepting Saturdays, Sundays,

and legal public holidays)... whether to comply with such request and shall immediately notify the person." Further, under (a)(6)(A)(ii), the same timeline guidance applies to appeals, and, "If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection." Under (i) or (ii), above, the time limits may be extended by written notice to the person making the request if "unusual circumstances" apply, but such extension would not be authorized to exceed ten working days.

## COUNT I
### (Violation of the Freedom of Information Act-5 U.S.C. §552)

39. Plaintiff realleges paragraphs 1 through 38 as if fully stated herein.

40. Defendants are unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. §552.

41. Plaintiff has exhausted applicable administrative remedies.

42. Plaintiff is being irreparably harmed because of Defendants' unlawful withholding of requested records. Plaintiff will continue to be irreparably harmed unless the Defendants are compelled to conform its conduct to the requirements of the law.

43. WHEREFORE, Plaintiffs respectfully request that the Court: (1) declare that Defendants violated the Freedom of Information Act; (2) order Defendants to immediately disclose the requested records, and limit redactions only to the names of CBP officers and computer function instructions, file location identifiers, and analytical processes used by CBP as it performs its duties and obligations under its Trusted Traveler Programs and make copies available to Plaintiff; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

## COUNT II
### (Violation of the Privacy Act, 5 U.S.C. §552a(g)(1)(B))

44.     Plaintiff realleges paragraphs 1 through 43 as if fully stated herein.

45.     Plaintiff is an individual seeking access to information about himself.

46.     Plaintiff retained the National Security Law Firm to represent him in this request on March 6, 2023. **Exhibit S**.

47.     Any documentation in the possession, custody, and control of Defendants is a record maintained in a system of records, as described 5 U.S.C. §552a(a)(4)- (5).

48.     Upon information and belief, there are records responsive to Plaintiff's request that are being withheld or released with redactions applied to relevant content that does not fall within Exemptions (b)(6), (b)(7)(C), or (b)(7)(E).  Defendants are wrongfully withholding records and information requested.

49.     Plaintiff requests that the Court enjoin the Defendant from the withholding of records and order the production to the complaint of records requests.

50.     Plaintiff has a legal right under the Privacy Act to obtain the information they seek, and there is no legal basis for Defendants' denial of said right.  Defendants' refusal to provide Plaintiffs with the requested records amounts to a deprivation of Plaintiff's federal rights.  The Defendants' failure to properly respond to Plaintiff's PA request violated the statutory deadline imposed by the FOIA in 5 U.S.C. §552 (a)(6)(A)(i) and 5 U.S.C. §552 (a)(6)(A)(ii)

51.     WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare that Defendants violated the Privacy Act; (2) order Defendants to immediately disclose the requested records, and limit redactions only to the names of CBP officers and computer function instructions, file location identifiers, and analytical processes used by CBP as it performs its

duties and obligations under its Trusted Traveler Programs and make copies available to Plaintiff; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

## COUNT III
### (Violation of the Privacy Act, 5 U.S.C. §552a(g)(1)(C))

52. Plaintiff realleges paragraphs 1 through 51 as if fully stated herein.

53. Defendants relied upon documents and information maintained in records they kept about Plaintiff in order to make their decision to revoke Plaintiff's NEXUS membership status.

54. Plaintiff has been aggrieved by Defendants' decision to revoke his NEXUS membership; namely, in addition to the fee Plaintiff has already paid for NEXUS ($50), since Plaintiff's request. Despite the fact that no derogatory information is provided in any of the records received from Plaintiff's FOIA request, the revocation of his NEXUS imposes a meritless, ongoing burden due to Plaintiff's necessity to travel.

55. As is evident by Defendants relying on records that show no derogatory information, Defendants failed to maintain Plaintiff's records with the degree of accuracy necessary to assure fairness in their determination regarding Plaintiff's NEXUS status.

56. But for the Defendants failure to release the responsive records they are required to by the Freedom of Information Act, Plaintiff would have been able to properly address the CBP's concerns in a request for reconsideration.

57. Defendants acted so egregiously and unlawfully that Defendants' personnel should have known their conduct and reliance on such records to Plaintiff's detriment was unlawful.

58.　　WHEREFORE, Plaintiff requests that this Court award them the following relief: (1) declare that Defendants violated the Privacy Act; (2) order Defendants to immediately disclose Plaintiff's responsive records and refrain from withholding the records he is entitled to receive under the Freedom of Information Act; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552a(g)(3)(B); (4) award Plaintiff actual damages as provided in 5 U.S.C. §552a(g)(4)(B); and (5) grant such other relief as the Court may deem just and proper.

### PRAYER FOR RELIEF AS TO COUNTS I-II

Plaintiff respectfully requests that the Court:

59.　　Declare the Defendants' failure to comply with FOIA and the Privacy Act to be unlawful;

60.　　Order the Defendants to conduct an independent and comprehensive search of its documents and records in response to Plaintiff's FOIA and Privacy Act Requests;

61.　　Order the Defendants to produce all responsive records without further delay or charge;

62.　　Enjoin the Defendants from continuing to withhold records responsive to Plaintiff's FOIA and Privacy Act Requests to Defendants;

63.　　Award Plaintiff attorneys fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. §552(a)(4)(E); and

64.　　Grant such other relief as the Court deems just and proper.

### PRAYER FOR RELIEF AS TO COUNT III

Plaintiff respectfully requests that the Court:

65.　　Declare the Defendants' failure to comply with the Privacy Act to be unlawful;

66. Order the Defendants to conduct an independent and comprehensive search of its documents and records in response to Plaintiffs' Privacy Act Request;

67. Order the Defendants to produce all responsive records without further delay or charge;

68. Enjoin the Defendants from continuing to withhold records responsive to Plaintiffs' Privacy Act Request to Defendants;

69. Award Plaintiff attorneys fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. §552(a)(4)(E);

70. Award Plaintiff actual damages in the amount of $10,000, plus additional amounts incurred that continue to accrue until completion of this lawsuit, pursuant to 5 U.S.C. §552a(g)(4)(B); and

71. Grant such other relief as the Court deems just and proper.

Dated:  March 8, 2025                    Respectfully submitted,

By: /s/ Brett J. O'Brien
BRETT O'BRIEN, ESQ
DC Bar License #: 1753983
NATIONAL SECURITY LAW FIRM, LLC
1250 Connecticut Avenue NW
Washington, DC 20036
Phone:  (202) 600-4996
Fax:     (202) 545-6318