UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRISTAN KHAN,

               Plaintiff,

     v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

             Defendant.

Civil Action No. 25-0697 (SLS)

## JOINT STATUS REPORT

Pursuant to this Court's Minute Order (December 15, 2025), Plaintiff Tristan Khan and Defendants Department of Homeland Security and Customs and Border Protection, by and through the undersigned counsel, respectfully file this Joint Status Report to inform the Court of the status of this case after the Court's order requiring undersigned counsel to meet and confer.

Lead Counsel for Plaintiff is Matthew Pollack, and Lead Counsel for Defendants is Robert Morris. Lead Counsels met at Gregory's Coffee on Thursday, December 18, 2025, for one-hour, from 5pm to 6pm, to attempt to narrow the dispute between the parties.

There are disagreements that may warrant this Court's intervention, and the Parties' positions are discussed in detail below. The Parties request this Court order the Parties to submit a joint status report in 30 days.

**Background**

      **A. The Previously Narrowed Dispute**

In September 2025. Plaintiff's Counsel Danielle Moora and Defendants' Lead Counsel narrowed the scope of the dispute. On September 12, 2025, Defendants provided Plaintiff with a

draft affidavit ("Draft Redactions Affidavit"), which explained their justifications for redactions. *See* Exhibit A. at 2.  On September 17, 2025, Plaintiff agreed to the adequacy of the search.  *Id.* Plaintiff's Counsel stated Plaintiff is "looking for the reason that CBP revoked his NEXUS membership."  *Id.*  On September 22, 2025, Plaintiff agreed to not dispute the personally identifiable information redactions ("PII").  *Id.* at 1.  The dispute was narrowed to redactions pursuant to 5 U.S.C. § 552(b)(7)(E) on two pages, pages 12 and 80. *Id.*

After the lapse of appropriations ended, the Parties maintained a narrow dispute over redactions pursuant to b(7)(E) on two pages, pages 12 and 80.  After Plaintiff's Counsel and Defendants' Lead Counsel held a meet and confer, the Parties submitted the Joint Status Report on November 24, 2025, reporting that the only remaining dispute were "(b)(7)(E) redactions on pages 12 and 80 of the documents, which Plaintiff believes relate to the reason for his NEXUS revocation." ECF No. 18 at 2.

On November 24, 2025, Plaintiff and Defendant submitted a Joint Status Report (November JSR) that narrowed many issues in dispute, see ECF 18, but Plaintiff has since raised new concerns related to the Defendant's previous releases.  In the November JSR, Plaintiff did not dispute the scope of the search and limited its concerns on redactions to Defendant's application of Exemption 7(E) on pages 12 and 80 of the released records. Since the November 24, 2025, Joint Status Report, the scope of the dispute has purportedly expanded.

### B.  The Current Dispute

By email on November 30, 2025, following further review of the released records, Plaintiff raised concerns related to the Defendant's search and application of exemptions.  In his email, Plaintiff's Counsel Brett O'Brien "update[d] the outstanding issues."  Exhibit B at 3. Plaintiff raised concerns about: (1) the scope of the search including two documents attached to

Plaintiff's complaint, which were not provided in the FOIA request; (2) that "most of the provided pages are not from the official System of Records[;]"; (3) the personally identifiable information redactions on pages 6-8; and (4) additional redactions on pages 6-8, 12-13, 73-74, and 80. *Id.*

On December 9, 2025, Defendants' Lead Counsel provided a brief response to Plaintiff's Counsel about Plaintiff's expanded request through email correspondence. *Id.* at 1. Defendants' Lead Counsel then met with Plaintiff's Lead Counsel in the courthouse cafeteria at about 12:30pm to discuss the disputed documents and engage in settlement negotiations. The Parties then attended the status conference on December 9, 2025, before this Honorable Court.

This Honorable Court ordered the Parties' Lead Counsels to meet and confer and then submit a joint status report by December 29, 2025.

**Meet and Confer Regarding Dispute**

The Parties' Lead Counsels met on December 18, 2025, to narrow the dispute and discuss the possibility of settlement prior to submitting Motions for Summary Judgment. The Parties discussed: (1) the scope of Defendants' search; (2) documents from the official System of Record; (3) personally identifiable information redactions; (4) reconsideration of redactions on pages 6-8, 12-13, 73-74, and 80; (5) the Draft Redaction Affidavit; and (6) settlement.

Outstanding issues remain in dispute related to the adequacy of the Defendant's search and certain redactions made to the released records.

**(1) The Adequacy of Defendants' Search and Documents from the official System of Record**

Plaintiff contests the adequacy of the Defendant's search. Plaintiff's position is that the Defendant should search for and provide copies of all requested records, as required under the federal statute and consistent with the Plaintiff's request. Defendant has not, at any time,

described the search undertaken to identify the records it released. It has not described the systems of records that it searched, the methodology it used when searching those systems, or why those search methodologies were appropriate for those systems. Plaintiff is therefore unable to fully assess the adequacy of the Defendant's search. *See, e.g.*, *Weisberg v. U.S. Dep't of Justice*, 200 627 F.2d 365, 371 (D.C. Cir. 1980) (agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the procedures utilized).

However, there are clear faults in the Defendant's search based on the initial release of records, tools accessible on the Defendant's own website, the Defendant's published System of Records Notices, and Defendant's past practice. For example, one released record explicitly references two other records – Forms I-275 and I-263A/I-877 – that the Defendant did not provide. These are records that the Defendant provided to the Plaintiff at the time of issuance and that the Plaintiff has since retained, but that the Defendant did not provide in response to the request that gave rise to this action. Those are not the only records referenced in the Defendant's release that the Defendant did not provide. Defendant released a Secondary Inspection Report dated September 23, 2013, though there is no corresponding record of that entry in the border crossing records Defendant provided. In conducting its search, an agency must pursue clear leads to other existing records. *Juda v. U.S. Customs Serv.*, No. 99-5333, 2000 U.S. App. LEXIS 17985, at *2 (D.C. Cir. June 19, 2000) (per curiam) (concluding that U.S. Customs improperly limited its search where it "not only . . . fail[ed] to pursue clear leads to other existing records, but . . . [also] identified at least one other record system . . . likely to produce the information [plaintiff] requests").

Tools made available for individuals to search their own travel history on the Defendant's website raise additional issues. For example, Defendant's website allows travelers to obtain a copy of their own most recent I-94 record[1]. That site provides a "most recent" I-94 for the Plaintiff dated November 20, 2004. Exhibit C. The Defendant provided records that show many I-94s issued since that date thereby raising separate questions about the reliability of that site, but more importantly, the records Defendant provided in response to the request at issue in this suit does not include any reference to that I-94. The version of the most recent I-94 provided by that site also includes additional information related to that I-94, including the traveler's class of admission and the date until which the Defendant admitted the traveler to the country. Both of those details are missing from the records produced by the Defendant in response to this request. At least with regards to the Plaintiff's I-94s, it is clear that the Defendant both did not locate all responsive records and did not provide all the information it maintains on the records it did provide. Defendant also allows travelers to obtain records of ten years of their own travel history[2]. That website indicates that the Plaintiff departed the United States on July 16, 2023. See Exhibit D. The records Defendant released in response to this request do not include that departure. The Defendant's oversight of these records indicates clear flaws in the search it conducted.

Further, Defendant acknowledges that it did not provide records from the System of Records that house the requested records. Defendant provided records from the Analytical Framework for Intelligence ("AFI"), which provides Defendant access to portions of records housed in other Systems of Records, but itself is the System of Records only for "finished

---

[1] https://i94.cbp.dhs.gov/search/recent-search

[2] https://i94.cbp.dhs.gov/search/history-search

intelligence products and any raw intelligence information, public source information, or other information collected by CBP for an intelligence purpose *that is not subject to an existing DHS SORN*." See Privacy Act of 1974; System of Records, 85 Fed. Reg. 80806 (Dec. 14, 2020). Therefore, it is not the System of Records for data such as the: date and time of crossing, location of crossing, secondary examination status, responses to certain CBP inspection-related questions, and other details related to border crossings. Such records are stored in the Border Crossing Information System of Records. See Privacy Act of 1974; Department of Homeland Security / U.S. Customs and Border Protection-007 Border Crossing Information, 89 Fed. Reg. 89,957 (Dec. 13, 2016). Similarly, it is not the System of Records for records pertaining to known or suspected violators. CBP stores such records in TECS (not an acronym). See Privacy Act of 1974; Department of Homeland Security / U.S. Customs and Border Protection-011 TECS System of Records Notice, 77 Fed. Reg. 77,778 (Dec. 19, 2008).

Importantly, this is not simply a quibble over the format of the records: Records retrieved from the official Systems of Records contain more information than the versions retrieved from AFI and provided by the Defendant. For example, Defendant provided a list of Mr. Khan's I-94 records, purportedly retrieved from AFI. Exhibit E. However, a version regularly produced by CBP's FOIA appeals staff retrieved from the information's official System of Records includes additional fields, including the arrival and departure ports of entry. See e.g., Exhibit F (a redacted version of this list, provided to the National Security Law Firm in response to a FOIA request submitted on behalf of another client). Defendant additionally provided a list of border crossings. Exhibit G. Again, a version regularly produced by CBP's FOIA appeals staff retrieved from the information's official System of Records provides additional information such as the document type, the carrier code, site, status, and referral information. See e.g., Exhibit H (a redacted

version of this list, provided to the National Security Law Firm in response to a FOIA request submitted on behalf of another client). The deficiencies are not limited to border crossing information. For example, the Defendant released an Admissibility Secondary Inspection Report. See Exhibit I. Again, a version regularly produced by CBP's FOIA appeals staff retrieved from the information's official System of Records provides additional information including additional biographical details about the subjects, the inspection start and end times, and whether certain additional records were created at the time of the inspection. Exhibit J. The above examples are not intended to be an exclusive list of all deficiencies in Defendant's decision to provide records from AFI instead of the official Systems of Records. Rather, they are provided to illustrate the reasons why AFI records in general are deficient.

These facially obvious faults raise questions as to the adequacy of the search. Regarding the adequacy of the search, at a minimum, Plaintiff requests that the Defendant search for and provide the additional records referenced in the records the Defendant already released or that are alternately available through Defendant's own website, and the complete version of records retrieved from the official Systems of Records described in the Defendant's own System of Records Notices. Plaintiff additionally requests a more complete description of the search Defendant conducted in response to the Plaintiff's request and, in particular, that the Defendant confirm that it has searched for all interagency and intra-agency correspondence related to Plaintiff.

Defendant's Lead Counsel expects the dispute to narrow back to code redactions pursuant to b(7)(E) before the Parties summary judgment briefing.

First, regarding whether the documents are from the official System of Record, Defendants provided the documents from the official System of Record. The documents were pulled from the Analytical Framework for Intelligence ("AFI").[3]

Second, regarding the scope of the FOIA request, Defendants' position is the two documents an I-275 (Withdrawal of Application for Admission) and an I-263A/I-877 (Records of Sworn Statements), which are attached to Plaintiff's Complaint, will be provided to Plaintiff.

At the meet and confer, Plaintiff's Lead Counsel expressly requested confirmation that the Defendants searched for all interagency and intra-agency correspondence. Defendants are investigating to confirm all interagency and intra-agency correspondence related to Plaintiff were provided.

At the meet and confer, Plaintiff's Lead Counsel, when expressly asked if there were any other outstanding documents (besides the requested I-275 and I-263A/I-8777 documents and the request to search again for interagency and intra-agency correspondence) said there were no other outstanding documents. However, in the Joint Status Report, Plaintiff now identifies (1) a Secondary Inspection Report dated September 23, 2013, (2) a departure from the United States on July 16, 2023, and (3) additional I-94 records. Defendants are investigating the newly identified documents described by Plaintiff and expect to provide a further update by the next Joint Status Report.[4] Upon initial investigation, it appears the documents identified by Plaintiff were either already provided or are not part of the records. For example, Plaintiff's reference to a Secondary Inspection Report dated September 23, 2013, would not be in the border crossing

---

[3]

https://www.dhs.gov/sites/default/files/2024-06/24_0624_priv_pia-cbp-010-afi-appendix-update.pdf.

[4]     Plaintiff's change in position regarding the scope of the search and outstanding documents is why Defendants request that Plaintiff moves first on summary judgment.

records because the inspection took place in Panama.  Plaintiff's reference to a departure from the United States on July 16, 2023, is part of the released documents–located on page 2. Plaintiff's reference to I-94 records is part of the released records–located on pages 3-5.

The document issues identified by Plaintiff's Lead Counsel above, including the newly identified documents, are being investigated.  The I-275 and I-263A/I-877, and other documents agreed to be released and/or partially unredacted, are expected to be released within 15 days from December 29, 2025.

### (2) Personally Identifiable Information

There is personally identifiable information on pages 6-8. Plaintiff's position is that the Defendant redacted Plaintiff's own personally identifiable information throughout the provided documents. Plaintiff identified the items on pages 6-8 merely as examples of the errors. The over-redactions of Plaintiff's own personally identifiable information call to question redactions made pursuant to other exemptions where it is not immediately clear from context what information Defendants redacted. It is the Defendant's duty under FOIA to provide all releasable information. It is not Plaintiff's duty to identify each instance of overbroad application of the exemptions. Plaintiff's position is that the Defendant should provide all reasonably segregable information from the requested records.

Defendants will provide this information now that Plaintiff is disputing it.  Plaintiff is requesting on pages 6-8 that his own address and FBI # be released to him.  These documents, and the other documents agreed to be released, are expected to be released within 15 days from December 29, 2025.

### (3) Application of Exemptions and Draft Redaction Affidavit

The Parties dispute redactions on pages 12, 13, 73-74, and 80.

Plaintiff contests whether the Defendant reasonably segregated all releasable information when redacting material from the released records.

Plaintiff's position is that, as with the search, there are facially obvious instances in which the Defendant over-redacted the released records. For instance, in various portions of the records, when the Plaintiff raised concerns, Defendant conceded that it had redacted the Plaintiff's own FBI number, FINS number, and home address. Those obvious errors call to question the care and scrutiny that the Defendant practiced while making redactions made in other portions of the records using other exemptions where the records themselves do not specifically label the redacted information.

The Plaintiff questions redactions the Defendant made throughout the released records pursuant to Exemption 7(E). However, in the interest of economy and in the interest of targeting the information Plaintiff believes is most relevant to his primary concerns of understanding why the Defendant revoked his Trusted Traveler Program membership and why Defendant later deemed him to be inadmissible to the United States, the Plaintiff identified redactions on just six pages that it requested Defendant to review. Plaintiff has asked only that Defendant more closely scrutinize the redactions on four records: An I-213 dated January 31, 2024 when Plaintiff was deemed inadmissible to the United States (pages 6-8 of the released records); two Secondary Inspection Reports dated January 28, 2023 completed just prior to the revocation of Plaintiff's Trusted Traveler Program Membership (pages 12-13 and 73-74); and Plaintiff's Trusted Traveler Program Membership Profile (and only the "Reasons" section on page 80). Plaintiff believes those redactions are overinclusive and Defendant did not provide all reasonably segregable non-exempt portions of the records. Defendant has not shown how the reason it revoked

Plaintiff's Trusted Traveler Program membership or the reason it determined the Plaintiff was inadmissible to the United States would lead to circumvention of the law by any other bad actors.

Contrary to Plaintiff's narrative about the personally identifiable information being an error, Plaintiff did not request a partial redaction until recently. *See* Exhibit A at 1 ("I think we can agree to not disputing the PII redactions."); *see also* Exhibit B at 3.

At the meet and confer, Defendants' Lead Counsel brought to Plaintiff's Lead Counsel's attention the Draft Redaction Affidavit. The Draft Redaction Affidavit provides an explanation for the redactions, and the Parties agreed to narrow the scope of the dispute to redactions on page 12 and page 80. *See* Exhibit A; ECF No. 18. Defendants' position is that the Parties should be bound to the agreement that this dispute is over the b(7)(E) redactions on page 12 and page 80 – as previously agreed upon by the Parties.

Defendants agree to a partial removal of redaction for page 80. As Plaintiff previously indicated, he seeks to understand why he was revoked from the NEXUS program. Exhibit A at 1. According to Plaintiff, understanding the "pg. 80, the b7e redaction for the reasons (internal) is critical." *Id.* Defendants believe this limited removal of a redaction will provide information of interest to Plaintiff. As Defendants are providing a partial removal of redaction to page 80, the page 80 redaction will likely no longer be a live dispute—leaving only the b(7)(E) redaction on page 12 in dispute.

Regarding the remaining pages, Defendants' position on pages 6-8 is that it will unredact the personally identifiable information of Plaintiff as discussed above. Regarding pages 12, 13, and 73-74, Defendants' position is that no further information will be released for the reasons outlined in the Draft Redaction Affidavit provided to Plaintiff on September 12, 2025. *See* Exhibit A at 1. The redactions are based on b(7)(E) applied to law enforcement record numbers

and identifiers, law enforcement system codes, and information about certain queries that were performed in CBP's law enforcement systems.

The removal of redactions of pages 6-8 and 80, and the other documents agreed to be released, are expected to be released within 15 days from December 29, 2025.

**(4) Settlement Discussions**

The Parties continue to engage in settlement negotiations.

**Next Steps**

The Parties request this Court to order the Parties to file a Joint Status Report in 30 days to allow Defendants 15-days to provide the additional unredacted documents and 15 days for Plaintiff to review the additional unredacted documents. Defendants expect the dispute will eventually return to a narrow dispute over Exemption b(7)(E) redactions.

If the parties are unable to come to an agreement to resolve this matter without further judicial intervention, Defendants request this Court set a schedule for summary judgment briefing, with Plaintiff moving first, so that he may articulate the bases for his challenges to Defendants' withholdings, and so that Defendants have adequate notice of what issues remain in dispute given Plaintiff's expansion of issues remaining to be resolved.

Plaintiff requests that the Court set a schedule for summary judgment briefing with Defendant moving first because the FOIA demands that the Defendant must justify both its search and withholdings. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested"); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (with regards to any information withheld under any of the exemptions "the FOIA

expressly places the burden 'on the agency to sustain its action'")(quoting 5 U.S.C. § 552 (a)(4)(B)).

* * *

Dated: December 29, 2025
       Washington, DC

By: /s/ *Matthew Pollack*
MATTHEW POLLACK, ESQ
Bar License #: 989063
NATIONAL SECURITY LAW FIRM,
LLC
1250 Connecticut Avenue
NW Suite 700
Washington, DC 20036
Phone: (202) 600-4996
Fax: (202) 545-6318

*Counsel for Plaintiff*

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:       /s/ *Robert J. Morris, II*
     ROBERT J. MORRIS, II
     D.C. Bar #1719434
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2534
     Robert.Morris@usdoj.gov

*Attorneys for the United States of America*